UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MATTHEW KELLER,

                              Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of the Social Security
Administration,

                              Defendant.

Case No.: 3:22-CV-707-WVG

**ORDER ON JOINT MOTION FOR JUDICIAL REVIEW**

## I.    INTRODUCTION

This action arises from the Commissioner of Social Security's ("Commissioner" or "Defendant") denial of Matthew Keller's ("Plaintiff") application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act ("Title XVI" or the "Act").  (Doc. No. 1.)  On February 28, 2023, the Parties filed a Joint Motion for Judicial Review of the Final Decision of the Commissioner of Social Security ("Joint Motion") pursuant to the Court's October 27, 2022 Scheduling Order.  (Doc. No. 16.)  The Joint Motion addresses four issues: whether Administrative Law Judge ("ALJ") Charles Woode ("ALJ Woode") erred in (1) analyzing the paragraph C criteria of the Act's Listings 12.03 and 12.04; (2) assessing the medical opinions of Dr. Bohn and Dr. Giglio; (3) formulating

Plaintiff's residual functional capacity ("RFC"); and (4) evaluating Plaintiff's noncompliance with medication. *See* Doc. No. 16.  Having reviewed and considered the Parties' submissions, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

## II.   PROCEDURAL HISTORY

On July 25, 2019, Plaintiff applied for SSI benefits under Title XVI.  (AR 312-18.) Plaintiff's application was twice denied, initially on September 6, 2019, and upon reconsideration on March 23, 2020. (AR 131-35; 146-50.)  On April 23, 2020, ALJ Woode received Plaintiff's written request for a hearing.  (AR 151-54.)  On December 3, 2020, Plaintiff telephonically appeared before ALJ Woode and requested legal representation, which ALJ Woode granted.  (AR 37-45).  On April 19, 2021, Plaintiff appeared and testified at the telephonic administrative hearing, pursuant to his agreement to appear telephonically.  (AR 46-72, 245, 289-93.)

On May 10, 2021, ALJ Woode convened a supplemental hearing to obtain the testimony of impartial vocational expert Esperanza DiStefano. (AR 15, 73-83.)  Plaintiff and Plaintiff's counsel attended this hearing telephonically.  (*Id.*)

On May 19, 2021, ALJ Woode issued an unfavorable decision on Plaintiff's Application for SSI benefits.  (AR 12-28.)  On April 27, 2022, the Appeals Council denied Plaintiff's Request for Review, finalizing ALJ Woode's decision on Plaintiff's application for benefits.  (AR 1-6.)  On May 17, 2022, Plaintiff filed this instant action seeking judicial review of ALJ Woode's Decision.  (Doc. No. 1.)

## III.   FACTUAL BACKGROUND

### a.  Plaintiff's Medical History and Allegations

Plaintiff is twenty-two years old and alleges he is unable to work due to mental impairments.  (AR 247-48; 305; 561.)  Plaintiff alleges a disability onset date of January 7, 2019.  (AR 312-18.)  Plaintiff has a high school education and no past relevant work. (AR 27.)   In addition to Plaintiff's alleged mental impairments, Plaintiff has a mild intellectual disability and fetal alcohol syndrome.  (AR 343-51; 488-89, 491; 662; 727-30;

734-36, 741.)  With respect to Plaintiff's mental impairments, Plaintiff contends he suffers from schizoaffective disorder (depressive type), paranoia, delusions, psychosis, major depressive disorder, intellectual disability, memory issues, headaches, and intramuscular disorder causing collapse.  (AR 483.)  Plaintiff's medical records reflect a history of suicidal ideations and attempted suicides.  (AR 347; 488-89, AR 491; 589.)

### b.  Early Treatment and Diagnosis

January 2019 was the first time Plaintiff received medical attention for his mental impairments.  (AR 491; 583; 658.)  Between January 2019 and June 2019, Plaintiff was brought to the emergency department three times for psychiatric evaluation under California Welfare and Institutions Code Section 5150 ("5150 hold") due to command auditory hallucinations, which directed Plaintiff to engage in self-harm and suicidal acts, and stress associated with his home and work life.  (AR 488-91; 570-72; 583-86.)  Plaintiff also reported struggling with sleep.  (AR 251; 334, 341-42, 348, 350-51; 380, 399.)  During each discharge, Plaintiff seemed willing to engage in daily living tasks and comply with his treatment regime and had decreased thoughts about suicide and self-harm.  (AR 508; 571-72; 598-99.)

On January 7, 2019, Plaintiff was admitted to Aurora Behavioral Health Care under a 5150 hold. (AR 570-78, 583-593.)  Ryan Wilke, D.O., ("Dr. Wilke") treated Plaintiff during his admittance at Aurora Behavioral Health Care. (*Id*.) Plaintiff reported he told his parents he was depressed but "they don't listen".  (AR 583.)  Plaintiff reported he was not taking any medications at admittance and during the course of treatment, with adjustments to Lexapro and Seroquel, one-on-one psychotherapy sessions, escalation of privileges and responsibilities (allowed to go to the gym, alone time at staff discretion and to the cafeteria for meals), and family counseling sessions, "his depression improved and suicidality completed resolved." (AR 854.)  At discharge, Plaintiff was future-oriented with improved mood and insight, consistently denied passive or active suicidal or violent ideations, and was noted to be capable of understanding the risk of nonadherence to his medications prescribed.  (*Id*.)

On May 29, 2019, Plaintiff presented before Dr. Wilke with suicidal ideations and "auditory hallucinations telling him to kill himself" and reported his job at a waterpark was "too stressful".  (AR 570, 573, 575.)  However, Dr. Wilke noted Plaintiff "contract[ed] for safety in the hospital" and displayed calm and cooperative behaviors regarding his medication and intensive treatment programs while he was admitted.  (AR 571-72, 575-76.)  Plaintiff contended his outpatient program was "not working."  (AR 570, 575.)  Plaintiff contended he did not feel Lexapro and Risperdal were helping him.  (AR 658.)  Upon discharge on June 3, 2019, Plaintiff seemed "stabilized and improving" and "denie[d] any intent to harm himself . . . in treatment at the hospital and denie[d] any passive or active homicidal or violent ideation, intent, or plan."  (AR 570-71.)  At discharge, Dr. Wilke noted Plaintiff was denying any passive or active suicidal, homicidal or violent ideations, and demonstrated agreeableness regarding active engagement in those treatment plans addressing his "acute symptomology causing complete functional impairment."  (AR 570-71.)

### c.  Dr. Bohn's Assessment of Plaintiff

On June 25, 2019, and June 27, 2019, Sara A. Bohn, Ph.D. ("Dr. Bohn") conducted neuropsychological assessments of Plaintiff.  (AR 658-662.)  Dr. Bohn conducted a clinical interview, the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV) Test, the Wechsler Memory Scale – Fourth Edition (WMS-IV), the Conners Continuous Performance Test – Third Edition (CPT-3), the Woodcock-Johnson Tests of Achievement IV, the Wisconsin Card Sort Test, and the Personality Assessment Inventory (PAI).  (AR 660.)

Plaintiff's performance on the WAIS-IV placed him in the "low average to borderline ranges of cognitive skill."  (AR 660; 673.)  Additionally, Plaintiff performed in the "low average to extremely low ranges of memory functioning when compared to same aged peers" on the WMS-IV.  (AR 660-61.)  Dr. Bohn determined the WMS-IV revealed Plaintiff "will struggle with most aspects of memory."  (AR 661.)  The CPT-3 test showed that Plaintiff would have a "moderate likelihood of having a formal attention deficit

disorder" and likely struggle with inattention and problem-solving even with help from others.  (*Id.*)  Further, Plaintiff performed within the first percentile on the Woodcock-Johnson Tests of Achievement IV.  (*Id.*)  Dr. Bohn determined Plaintiff could not complete "simple reading comprehension" tasks like reading the word "bird."  (*Id.*)  Lastly, the Personality Assessment Inventory revealed that Plaintiff would struggle with agitation, hopelessness, hostility, mistrust toward others, low energy, mood swings, suicidal ideation, and unhappiness.  (AR 662, 671.)

Dr. Bohn's diagnostic impression of Plaintiff was that he had schizoaffective disorder, depressive type, and a mild intellectual disability.  (AR 662, 671.)  Dr. Bohn determined Plaintiff would struggle in education and work settings and was at risk of self-harm and acting impulsively, however stated Plaintiff's parents should research whether Plaintiff would be considered for programs other than SSDI due to his limited skills for productive work and severe mental health conditions.  (*Id.*)

### d.  Dr. Giglio's Assessment of Plaintiff

On May 9, 2019, Plaintiff began treatment with clinical psychologist John Giglio, Ph.D. ("Dr. Giglio").  (AR 555.)  Dr. Giglio saw Plaintiff bimonthly.  (*Id.*)  On July 10, 2019, Dr. Giglio conducted an assessment of Plaintiff's mental status.  (*Id.*)  Dr. Giglio concluded Plaintiff was "well-groomed" and "cooperative" but had "agitated motor activity," slow and delayed speech, apathy, and thought-blocking tendencies.  (*Id.*)  During the sensorium and cognitive functioning part of the examination, Dr. Giglio concluded Plaintiff was oriented (i.e., person, place, time, situation) but had mildly impaired concentration, moderately impaired memory for recent and remote memories, and borderline intelligence.  (*Id.*)  Regarding Plaintiff's mood and affect, Plaintiff demonstrated a depressed mood and a blunted affect. (AR 556.)  On the perception section of the examination, Plaintiff displayed auditory hallucinations and misidentification delusions. (*Id.*)  Dr. Giglio noted Plaintiff believed his perception issues stemmed from "chaos at home."  (*Id.*)  Regarding Plaintiff's thought process, Plaintiff had loose associations and moderately impaired judgments (i.e., "poor decision making").  (*Id.*)  His content delusions

were about persecution, and his content preoccupations covered depersonalization. (*Id.*)

Dr. Giglio found Plaintiff was poor (i.e., "evidence supports the conclusion that the individual cannot usefully perform or sustain the activity") in the following areas:

(1) "Understand, remember, and carry out complex instructions;

(2) Maintain concentration, attention, and persistence;

(3) Complete a normal workday and workweek without interruptions from psychologically based symptoms;

(4) Respond appropriately to changes in a work setting." (AR 557.)

Dr. Giglio found Plaintiff was fair (i.e., "the evidence supports the conclusion that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described") in the following areas:

(1) "Understand, remember, and carry out simple instructions;

(2) Perform activities within a schedule and maintain regular attendance;

(3) Interact appropriately with the public;

(4) Interact appropriately with supervisors; and

(5) Interact appropriately with co-workers." (*Id.*)

### e. Plaintiff's Other Health Assessments

On August 1, 2019, Plaintiff presented to Dennis Ordas, M.D. for a mental status exam. (AR 343.) He reported Zyprexa helped with his sleep, and Risperdal helped mitigate his hallucinations and suicidal ideations. (*Id.*) He reported anxiety and hallucination but denied suicidal thoughts. Dr. Ordas diagnosed Plaintiff as having mild intellectual disability and schizoaffective disorder, depressive type, and noted a reasonable expectation of improvement for Plaintiff. (*Id.*)

On September 3, 2019, T. Dupont, M.D., ("Dr. Dupont"), reported that Plaintiff's alleged physical impairments were not severe, and he could adjust to doing other work. (AR 105, 108.) Additionally, on September 3, 2019, Maurice Rudmann, Ph.D., ("Dr. Rudmann") conveyed Plaintiff "does not need any assistance with personal care," however Plaintiff may need reminders. (AR 108.) Dr. Rudmann also noted Plaintiff could care for

his pet, shop in stores, count change, and socialize with friends at social outings such as the beach and movie theaters. (*Id.*) However, Dr. Rudmann reported Plaintiff does not go out alone. (*Id.*)

On November 26, 2019, and January 7, 2020, Plaintiff presented to Michael Frost, F.N.P., ("Nurse Frost") treated Plaintiff. (AR 716-25.) Nurse Frost observed Plaintiff had a "subtle memory impairment" but denied needing help cooking, communicating, finances, housework, traveling, walking, dressing, bathing, eating, and using the bathroom. (AR 722.) Nurse Frost reported Plaintiff self-discontinued Lexapro, which was prescribed to reduce hallucinations and improve mood, and began to cut Zyprexa into small chunks because the full medication "sedated" him. (AR 734, 737-38, 741.)

On March 11, 2020, K. Sin, M.D., ("Dr. Sin") contended Plaintiff's physical impairments were non-severe. (AR 121.) Regarding Plaintiff's residual functional capacity, on March 21, 2020, Pamela Hawkins, Ph.D., ("Dr. Hawkins") concluded Plaintiff could interact with co-workers, adapt to changes in work environments, and understand and execute simple instructions at work. (AR 125-27.)

Between September 25, 2020, and September 29, 2020, Plaintiff was treated at the West Yavapai Guidance Clinic, where he presented with symptoms of anxiety, depression, and suicidal ideation. (AR 987-92.) On September 25, 2020, Plaintiff seemed "sedated and disheveled with a flat, odd affect, and depressed." (AR 1017, 1041, 1065, 1089, 1113.) Plaintiff expressed his stressors included issues at home with his grandmother. (AR 989; 1213.) On September 27, 2020, Erin Ortega, BS, BHT ("Ms. Ortega") from the West Yavapai Guidance Clinic, reported Plaintiff did not want to return home because of his abuse from his grandmother and uncles. (AR 1233.) Ms. Ortega contended Plaintiff was "alert and oriented" and "talkative when prompted." (*Id.*) However, Plaintiff expressed he was suicidal and his suicidal ideations "w[ould] increase upon [discharge] and with his return to his living situation." (*Id.*) Upon being discharged from the West Yavapai Guidance Clinic on September 29, 2020, Plaintiff exhibited an "improved mood with medication stabilization and denied" having suicidal ideations. (AR 992.) Plaintiff also

seemed "bright and engaging" and was "future planning and made good eye contact." (*Id.*) Plaintiff also reported "his plan is to get a job and look for alternate housing". (*Id.*)

On March 24, 2021, general practitioner Franklin Galef, M.D., ("Dr. Galef") treated Plaintiff. (AR 975.) Dr. Galef noted that Plaintiff was depressed and had gone up to two days without sleeping, which resulted in hallucinations. (AR 975-76.) Plaintiff denied having suicidal ideations and auditory and visual hallucinations. (AR 975.)  However, Dr. Galef was unsure whether Plaintiff had ADHD or undifferentiated schizophrenia. (AR 976.)  Plaintiff told Dr. Galef "he did well on fluoxetine and bupropion," to which Dr. Galef had Plaintiff "restart the combination." (*Id.*)

### f.  Vocational Expert Testimony

On May 10, 2021, impartial vocational expert, Esperanza DiStefano testified at the telephonic supplemental administrative hearing regarding Plaintiff's disability benefits. (AR 73-83.) Ms. DiStefano testified that based on Plaintiff's age, education, work experience, and residual functional capacity Plaintiff would be able to perform occupations such as sweepers, icers, and markers.  (AR 77-79.)

### g.  ALJ Woode's May 19, 2021 Decision

On May 19, 2021, ALJ Woode issued his Notice of Decision, finding Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act based on the application for supplemental security income filed on July 25, 2019. (AR 28.) ALJ Woode made ten findings of fact and conclusions of law in his Notice of Decision:

(1) The claimant has not engaged in substantial gainful activity since July 25, 2019, the application date (20 CFR 416.971 et seq.); (AR 17.)

(2) The claimant has the following severe impairments: schizoaffective disorder, major depressive disorder, and mild intellectual disability (20 CFR 416.920(c)). (*Id.*)

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (AR 18.)

(4) [T]he claimant has the residual functional capacity to perform a full range of

work at all exertional levels but with the following non-exertional limitations: The claimant can understand, remember, and carry out simple, routine, and repetitive one-to-two step tasks in low-stress work environments without fast pace or high production quotas, where "low-stress" is defined as those jobs having only occasional decision-making and occasional changes in work setting. The claimant can perform jobs which can be learned by demonstration. The claimant can have occasional contact with co-workers and supervisors, but should not perform team or tandem work, and cannot have contact with the public. (AR 21.)

(5) The claimant has no past relevant work (20 CFR 416.965). (AR 27.)

(6) The claimant was born on April 14, 1999, and was 20 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963). (*Id.*)

(7) The claimant has at least a high school education (20 CFR 416.964). (*Id.*)

(8) Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968). (*Id.*)

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)); and (*Id.*)

(10) The claimant has not been under a disability, as defined in the Social Security Act, since July 25, 2019, the date the application was filed (20 CFR 416.920(g)). (AR 28.)

ALJ Woode accepted the vocational expert's testimony holding Plaintiff's limitations permitted him to work as sweeper, icer, and marker. (*Id.*) In doing so, ALJ Woode, found the vocational expert's testimony consistent with the Dictionary of Occupational Titles ("DOT") and that any testimony on limits not contemplated by the DOT was based on the vocational expert's professional knowledge and experience. (AR 28; 474-76.)

/ / /

/ / /

## IV.   LEGAL STANDARD

### a.  Title XVI Analysis

Title XVI of the Social Security Act provides for Supplemental Security Income to claimants who can establish (1) the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment; or (2) a combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual seeking social security benefits bears the initial burden of establishing that they have a disability. 20 C.F.R. § 416.912; *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Therefore, if the individual fails to prove they have a disability, their application for benefits can be denied. *See Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). Where a claimant makes this showing, the burden shifts to the Commissioner to prove the claimant can still work and that work is available for him. *Valentine v. Comm'r SSA*, 574 F.3d 685 (9th Cir. 2009); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

To evaluate whether a claimant is qualified under the Act, the Court undertakes a five-step inquiry analyzing whether (1) the claimant is presently working and has substantially gainful activity; (2) the medical severity of claimant's impairment(s); (3) the impairment(s) "meets or equals" one of the impairment listings itemized in the Social Security Regulations; (4) the claimant is able to perform any work that he has not previously performed; and (5) the claimant is able to perform any other work, where, if so, the Commissioner bears the burden of proving "that there are a significant number of jobs in the national economy that the [applicant] can do." 20 C.F.R. § 416.920 (2012). The court's inquiry ends when a claimant is found to be "disabled" or "not disabled" at any step in the analysis. *Id.*

/ / /

/ / /

**b. Judicial Review of Administrative Decision on Title XVI Applications**

Section 405(g) of the SSA authorizes unsuccessful claimants to seek judicial review of the Commissioner's final administrative decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, as the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) ("substantial evidence is more than a mere scintilla but less than a preponderance"); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency [in judicial review of social security decisions] is not high"). The court must consider the record in its totality, weighing evidence that both supports and undercuts the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Concurrently, the court must uphold the ALJ's decision where the evidence supports more than one rational interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); see also *Rounds v. Comm'r SSA*, 807 F.3d 996, 1002 (9th Cir. 2015). Under such circumstances, high deference is mandated. *Rounds*, 807 F.3d at 1002; *Valentine*, 574 F.3d at 690.

## V. DISCUSSION

### a. ALJ Woode's Discussion of Paragraph C Criteria of Listings 12.03 and 12.04

The first issue Plaintiff raises contends that ALJ Woode inadequately analyzed Plaintiff's impairments in relation to the Paragraph C criteria of Social Security Regulations Listings §§ 12.03 and 12.04 ("Paragraph C criteria"). (Doc. No. 16 at 7-9, 14-16.) Plaintiff argues ALJ Woode erred because his analysis of the Paragraph C criteria was boilerplate and the Administrative Record clearly demonstrates that Plaintiff meets the Paragraph C criteria due to Plaintiff's mental impairments existing for more than two years, Plaintiff's history of attempted suicide and deterioration resulting in admittance to inpatient programs, and Plaintiff's minimal capacity to adapt to changes in his environment, which

both contribute to Plaintiff's inability to sustain work. *Id.* at 9:4-17, 9:19-27, 15:6-11. In turn, the Commissioner argues the burden falls on Plaintiff at the step-three analysis to demonstrate that his impairments met all the Paragraph C criteria and ALJ Woode adequately addressed the Paragraph C criteria even if it was not entirely discussed under the relevant section of the Notice of Decision so long as it was discussed in another section. *Id.* at 10:1-12, 11-12. The Commissioner also argues that even if ALJ Woode erred in his analysis of the Paragraph C criteria, the error was harmless due to Plaintiff's failure to meet the requirements of Listings §§ 12.03(C) and 12.04(C). *Id.* at 12-14.

At step-three of the five-step inquiry the ALJ is required to determine whether a claimant's medical impairment "meets or equals" one of the impairments listings ("Listings") itemized in Appendix 1 to subpart P of Part 404 of the Social Security Regulations and meets the durational requirements to qualify as a disability. 20 C.F.R. § 416.920(a)(4)(iii). Listings 12.03 and 12.04 require satisfaction of Paragraphs A and B, or A and C, to meet or equal an impairment of schizophrenia spectrum and other psychotic disorders or depressive, bipolar and related disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A)(2), 12.03, 12.04.

In pertinent part, Paragraph C criteria of Listings 12.03 and 12.04 both require a claimant to have a "serious and persistent mental disorder", meaning a "medically documented history of the existence of [a] [mental] disorder over a period of at least two years" and evidence of both (1) "medical treatment, mental health therapy, psychosocial support(s) or a highly structured setting(s) that is ongoing and diminishes the symptoms and signs for [the claimant's] mental disorder," and marginal adjustment which is "minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A)(2)(c), 12.03(C), 12.04(C).

At step-three, the claimant bears the initial burden of establishing the existence of a severe impairment and, ultimately, disability. *See Artis v. Barnhart*, 97 F.App'x 740, 741 (9th Cir. 2004) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)); *Ukolov*, 420

F.3d at 1004. Plaintiff must show that his impairment meets all the specified medical criteria to qualify as disabled. *See* 20 C.F.R. § 416.920(a)(4)(iii). If the ALJ determines a claimant's impairment does not satisfy a listing, the ALJ must provide adequate support for the finding in his decision. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). When supporting his step-three determinations, the ALJ must discuss and evaluate evidence supporting the decision, however, the ALJ is not required to discuss evidence under any particular heading. *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013); *Lewis*, 236 F.3d at 513.

Although ALJ Woode's analysis of the Paragraph C criteria of Listings 12.03 and 12.04 were not elaborately discussed under the step-three section of the Notice of Decision, the Court finds that ALJ Wood did not err in his analysis of the Paragraph C criteria because ALJ Woode provided adequate support and discussed Plaintiff's impairments in another section. *See Connors v. Colvin*, 656 F.App'x 808 (9th Cir. 2016) ("The ALJ did not include a discussion of the relevant rheumatoid arthritis evidence in the section of his opinion dedicated to the listing analysis, but he did include a discussion of the relevant evidence later in his opinion. Therefore, his analysis was procedurally proper."); *see also Lewis*, 236 F.3d at 513; *Ozolins v. Saul*, 849 F.App'x 682, 683 (9th Cir. 2021) ("Although the ALJ's explanation might have been more robust, her lengthy evaluation of the evidence elsewhere 'is an adequate statement of the foundations on which the ultimately factual conclusions are based.'"), citing *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). "An ALJ's lack of formal analysis and findings at Step Three, however, will not constitute reversible error when: the ALJ's subsequent discussion of the relevant medical evidence supports a conclusory finding; and with respect to equivalency, plaintiff fails to proffer a theory or evidence showing that his combined impairments equal a Listing." *Guerra v. Astrue*, No. EDCV 09-02274-MAN, 2010 WL 5088774, at *6 (C.D. Cal. Dec. 7, 2010) (citing to *Lewis,* 236 F.3d at 513-14.) Furthermore, even if an ALJ erred, the error is harmless if it is "inconsequential to the ultimate non-disability determination." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055-56 (9th Cir. 2006).

Here, ALJ Woode's analysis and the foundations that formed the basis of his factual conclusions about whether Plaintiff's mental impairments were serious and persistent over a period of two years can be found in ALJ Woode's fourth finding of fact. *See* AR 21-27. Specifically, ALJ Woode discussed Plaintiff's treatment history and pointed to multiple instances where Plaintiff's records suggested the claimant's family or home life was a primary source of Plaintiff's depression and suicidality not his mental impairments. (AR 23, 24, 25.) ALJ Woode specifically noted Plaintiff admitted to Dr. Bohn that his anxiety and suicidal ideations stemmed from issues at home. (AR 24.) ALJ Woode discussed Plaintiff's visit with Nurse Frost where Plaintiff denied needing assistance with shopping, cooking, housework, or transportation and admitted his mental impairments were due to issues at home. (*Id.*) ALJ Woode also considered Plaintiff's admittance at West Yavapai Guidance Clinic in September 2020 where Plaintiff endorsed suicidality due to his primary life stressors involving residing with an emotionally abusive grandmother, distance from his dog and only friend, history of childhood and verbal abuse, and unsupportive family system preventing him from obtaining a job. (AR 24.) ALJ Woode also cited to Plaintiff's exhibited history of suicidal statements in response to tense volatile familial interactions. (AR 25.)

Additionally, ALJ Woode also discussed and considered Plaintiff's inconsistent history of medical treatment and mental health therapy which directly relates to the Paragraph C criteria. ALJ Woode's fourth finding of fact recounted Plaintiff's consistent history of ceasing to take his prescribed medications and failure to appear at routine mental health appointments after each of Plaintiff's hospital discharges. (AR 25.) Specifically, ALJ Woode noted Plaintiff's records suggest Plaintiff discontinued all mental health interventions and prescribed psychotropic medications after his discharge from the hospital in April of 2019. (AR 22.) ALJ Woode cited to Dr. Galef's March 24, 2021 observation that Plaintiff had not required acute psychiatric care since September of 2020 and had not participated in outpatient care since August 2019. (AR 24-25.) Further, ALJ Woode specifically noted "It appears that the claimant was lost to regular follow up with mental

health services between August 8, 2019 and November of 2019." (AR 24.) ALJ Woode also noted that during an internal medicine visit in March of 2021, Plaintiff self-reported he had stopped taking his medications for symptom controls at his own initiative. (AR 25.)

The Court further finds that ALJ Woode did not err in addressing whether Plaintiff satisfied the requirement of "marginal adjustment" set forth in the Paragraph C criteria. Marginal adjustment is defined as:

> [y]our adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00G(2)(c)

ALJ Woode's Notice of Decision considered Plaintiff's medical records, Plaintiff's own testimony and medical expert opinions to determine that the record did not establish that Plaintiff achieved only marginal adjustment. Specifically, ALJ Woode found that Plaintiff's functional abilities and range of daily living activities were inconsistent with disabling symptoms that were work preclusive. *See* AR 18-25. For example, ALJ Woode found that after the alleged onset of disability, Plaintiff advocated for himself during psychological treatment; was cooperative and interacted well at examinations and appointments; cared for his personal needs; performed light chores; enjoyed leisure activities; socialized; and sought and obtained employment (AR 18-19, 21-22, 25). ALJ Woode also found that records indicated Plaintiff's only job may have ceased for reasons unrelated to his reported impairments. (AR 25-26). ALJ Woode also found to be generally persuasive the state agency medical consultants who rated Plaintiff's limitations in the four

paragraph B domains as mild or moderate at most and found that the medical evidence did not establish the presence of the Paragraph C criteria. (AR 26-27, 107, 123). Based upon the foregoing, Plaintiff's contention that ALJ Woode's Notice of Decision did not adequately address the paragraph C criteria of Listings 12.03 and 12.04 is unsupported.

Finally, with respect to Plaintiff's argument that ALJ Woode completely failed to address any of the Paragraph A criteria required by Listings §§ 12.03 and 12.04 (Doc. No. 16 at 14:25-15:5), the Court finds the ALJ's failure to address Paragraph A criteria to constitute nothing more than harmless error as Listings §§ 12.03 and 12.04 requires satisfaction of Paragraphs A and B, or Paragraphs A and C, and ALJ Woode's Notice of Decision thoroughly analyzed and concluded Plaintiff did not sufficiently meet Paragraphs B[1] and C. Thus, even if Plaintiff did sufficiently meet Paragraph A criteria, Plaintiff's failure to satisfy Paragraphs B and C criteria renders the same result of a non-disability determination.

The Court finds that ALJ Woode did not inadequately address Plaintiff's impairments in relation to the Paragraph C criteria of Listings 12.03 and 12.04 and finds no valid grounds to vacate ALJ Woode's ruling on this issue.

**b.  ALJ Woode's Assessment of Drs. Bohn and Giglio's Medical Opinions**

Plaintiff next contends ALJ Woode erred because ALJ Woode failed to address Dr. Bohn's opinion and improperly rejected Dr. Giglio's opinion. (Doc. No. 16 at 16-22, 31-33.)

/ / /

/ / /

---

[1] Although ALJ Woode's Notice of Decision states he considered the Paragraph B criteria of Listing 12.05 in his finding at step-three (AR 18-19), it appears ALJ Woode was actually analyzing the Paragraph B criteria of Listings 12.03 and 12.04 (one "extreme limitation" or two "marked limitations" in a claimant's functional ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself) based upon the Court's comparison of Listing 12.03, 12.04, and 12.05.

1

### i. **Dr. Bohn**

2     Plaintiff contends ALJ Woode failed to address Dr. Bohn's opinion, rendering ALJ

3 Woode's ultimate decision unsupported by substantial evidence. (Doc. No. 16 at 17-19,

4 31-32.) The Commissioner argues that Plaintiff ignores the new regulation's requirement

5 that a medical opinion must describe what the claimant can still do despite their

6 impairments and Dr. Bohn's report did not qualify as a medical opinion.  *Id.* at 23-24.

7     A medical opinion is "a statement from a medical source about what [a claimant]

8 can still do despite [his] impairments and whether [he has] one or more impairment-related

9 limitations or restrictions" in his ability to perform physical or mental work activities. 20

10 C.F.R. § 416.913(a)(2). To reject the un-contradicted opinion of an examining physician,

11 the ALJ must provide "clear and convincing reasons that are supported by substantial

12 evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

13 Although an ALJ is not required to discuss every piece of evidence or address every issue,

14 he must explain why significant probative evidence has been rejected. *Vincent v. Heckler*,

15 739 F.2d 1393, 1394–95 (9th Cir. 1984).

16     Here, the Court's review of Dr. Bohn's evaluation and report reveals Dr. Bohn did

17 make statements about what Plaintiff could do in light of his impairments and whether

18 Plaintiff had an impairment-related limitation in his ability to perform work activities. *See*

19 AR 661-662.  Specifically, Dr. Bohn's report opined that "When considering the data, it

20 can be seen that Matthew will have great difficulty with any kind of education or work

21 opportunities." (AR 662.)  In addressing Plaintiff's executive function and attention, Dr.

22 Bohn's report also stated "Thus, it seems likely to conclude that [Plaintiff] will have

23 notable difficulty with problem solving in his daily life, even with others helping him."

24 (AR 661.) In addition to summarizing Plaintiff's test results, Dr. Bohn's report also

25 recommended Plaintiff's parents research whether Plaintiff would be considered for

26 programs such as "The Regional Center", which provides support for persons with

27 developmental disabilities.  *Id.*  Dr. Bohn's report also recommended that Plaintiff's

28 parents should pursue SSDI if Plaintiff was aged out of support programs, due to Plaintiff

having "limited skills for productive work and severe mental health conditions." *Id.* Despite the Commissioner's characterization that Dr. Bohn's report was not a medical opinion, a conservative review of Dr. Bohn's report demonstrates it would qualify within the definition of a medical opinion. Thus, ALJ Woode failed to address the persuasiveness of Dr. Bohn's opinion.

However, even though ALJ Woode failed to address the persuasiveness of Dr. Bohn's medical opinion, considering the record as a whole, ALJ Woode's error was harmless because ALJ Woode did cite to and address the substance of Dr. Bohn's evaluation and medical opinion multiple times when determining Plaintiff's RFC. *See* AR 18-24. If the ALJ ignores a medical opinion, we review that omission for harmless error. *Nadon v. Saul*, 851 F. App'x 24, 26 (9th Cir. 2021) citing to *Marsh v. Colvin*, 792 F.3d 1170, 1172–73 (9th Cir. 2015); *see also Burch*, 400 F.3d at 679 (holding that the agency's conclusion will not be reversed for errors that are harmless). An error is harmless if it "was clear from the record that an ALJ's error was inconsequential to the ultimate non-disability determination." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1169 (9th Cir. 2008). "In reviewing the agency's determination, a reviewing court considers the evidence in its entirety, weighing both the evidence that supports and that detracts from the ALJ's conclusion." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018) (citation omitted).

Specifically, ALJ Woode cited Plaintiff's results on the Wechsler Adult Intelligence Scale, 4th edition, which determined that Plaintiff had average verbal comprehension, processing speed, perceptual reasoning, borderline working memory, and an IQ of seventy-five. (AR 23.) ALJ Woode also cited Plaintiff's performance on the Wechsler Memory Scale, 4th edition, where Plaintiff performed poorly on memory tests and demonstrated poor visual working memory abilities. (*Id.*) ALJ Woode referenced the Woodcock-Johnson Tests of Achievement 4th edition, where Plaintiff showed "extremely limited ability to solve academic problems and quickly perform simple reading, math, and writing tasks." (*Id.*) Additionally, ALJ Woode acknowledged Dr. Bohn's determination that Plaintiff had a schizoaffective disorder and mild intellectual disability in his evaluation of Plaintiff's

RFC. (AR 23-24.) Not only did ALJ Woode cite to Dr. Bohn's evaluation, but ALJ Woode also accommodated Plaintiff's cognitive and mental capabilities in the residual functional capacity. (AR 25.) ALJ Woode's RFC assessment limiting Plaintiff to simple and routine tasks in low-stress environments accounted for Dr. Bohn's findings articulating Plaintiff has "borderline working memory and full-scale IQ scores, with a full-scale IQ score of seventy-five." (AR 23; 728-29.) ALJ Woode further addressed Dr. Bohn's evaluation by stating, "[n]otably, secondary to available neuropsychological testing indicative of memory and cognitive deficits, I have further limited the claimant to one-to-two step tasks which can be taught by demonstration." (AR 27.)

Based upon the above, the Court finds that ALJ Woode's failure to address the persuasiveness of Dr. Bohn's evaluation did not amount to more than harmless error and the Court may not reverse an ALJ's decision on account of a harmless error. *Stout,* 454 F.3d at 1055-56. Accordingly, the Court finds no valid ground to vacate ALJ Woode's ruling on this issue.

### ii.  **Dr. Giglio**

Plaintiff next contends that the ALJ improperly rejected Dr. Giglio's opinion even though Dr. Giglio's opinion was well-supported and consistent with the record. (Doc. No. 16, 26-31, 32-33.)  The Commissioner contends ALJ Woode properly found Dr. Giglio's opinion to be unpersuasive because it was unsupported and not consistent with the longitudinal record.  *Id.* at 26-31.

The applicable regulations provide that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight to any medical opinions, or prior administrative finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate medical opinions based on their persuasiveness. *Id.* To determine a medical opinion's persuasiveness, an ALJ must consider the following factors: "supportability, consistency, treatment relationship, specialization, and 'other factors'" §§ 404.1520c(b), (c)(1)-(5); 416.920c(b), (c)(1)-(5). The ALJ's duty to explain his findings varies based on each factor. §§ 404.1520c(a)-(b);

416.920c(a)-(b). Importantly, the ALJ must explain how he considered the most important factors of supportability and consistency. § 404.920c(b)(2)-(3). Supportability is the "extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (citing § 404.1520c(c)(1)). Consistency is the "extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (citing § 404.1520c(c)(2)).

Further, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Thomas v. Barnhart*, 278 F.3d 948, 954 (9th Cir. 2002) ("Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion").

Here, the Court finds ALJ Woode properly rejected Dr. Giglio's opinion because ALJ Woode assessed the supportability and consistency of Dr. Giglio's medical opinion. *See Valentine*, 574 F.3d at 692; *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Importantly, in the context of social security appeals cases, substantial equates to a "more than a mere scintilla but less than a preponderance." *See Sandgathe*, 108 F.3d at 980. "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency [in judicial review of social security decisions] is not high". *Biestek*, 139 S.Ct. at 1154.

Regarding supportability, ALJ Woode concluded Dr. Giglio's opinion was unsupported by the record, including Dr. Giglio's own opinions. (AR 26.) Specifically, ALJ Woode addressed the deficiencies between Dr. Giglio's evaluation of Plaintiff on July 10, 2019 and his conclusion that Plaintiff had "fair to poor" ability to function in all areas of work. (AR 26.) ALJ Woode pointed to the fact that Dr. Giglio's opinion stated Plaintiff exhibited "mildly impaired concentration, moderately impaired recent and remote memory, and borderline intelligence" yet concluded that Plaintiff had "fair to poor" function. (*Id.*) ALJ Woode noted that Dr. Giglio's "fair to poor" conclusion was

unsupported by the "mild to moderate mental status finding summary" included in the medical statement itself.  (*Id.*) ALJ Woode also noted that Dr. Giglio's opinion was drafted just six months after the claimant first sought mental health treatment and might not accurately reflect Plaintiff's current functioning as Dr. Giglio had opined. (AR 26.) Finally, ALJ Woode also noted that Dr. Rudmann addressed Dr. Giglio's medical statements and stated Dr. Giglio's opinions were unpersuasive due to lack of corroborating records. (AR 26-27.)  Therefore, ALJ Woode properly rejected Dr. Giglio's opinion under the supportability factor.

Regarding consistency, ALJ Woode expressly identified inconsistencies between Dr. Giglio's ultimate conclusions on Plaintiff's health and the objective medical records informing Dr. Giglio's findings. (AR 26.) Most notably, Dr. Giglio's assessment that Plaintiff "had fair to poor ability to function in all areas of work, including simple and complex task completion and dealing with others" did not align with Dr. Giglio's mild to moderate impairments with concentration and memory, respectively.  (AR 26; 555, 557.) Further, Dr. Giglio's opinion was inconsistent with the record because Plaintiff's medical history in the record included "significant improvement with medication and psychotherapy." (AR 26; 535, 583); *See also Allen v. Kijakazi*, No. 22-35056, 2023 U.S. App. LEXIS 7670, at *2 (9th Cir. Mar. 31, 2023) (holding that an ALJ can deem medical opinions unpersuasive if they are "not consistent with the longitudinal evidence of record"). Furthermore, ALJ Woode also considered Plaintiff's daily living routines, such as meal preparation and socialization, and concluded Plaintiff's "activities inconsistent with disabling symptoms. (AR 25; 380-81, 383-84, 576.) ALJ Woode also considered opinions from Drs. Rudmann and Hawkins who found Plaintiff could still perform simple and routine tasks in non-public settings.  (*Id.*)

ALJ Woode properly discounted Dr. Giglio's ultimate conclusions because he went through the record and considered the opinions of Drs. Giglio, Rudmann, Hawkins, and Plaintiff's daily activities. *See Ferreira v. Kijakazi*, No. 22-15906, 2023 U.S. App. LEXIS 7822, at *1 (9th Cir. Apr. 3, 2023) (holding that an ALJ's rejection of a treating physician's

testimony was supported by substantial evidence because the ALJ "went through the entirety of the record and identified inconsistencies not just between the treating [physician's] medical opinion and [plaintiff's] daily activities, but also in various medical opinions presented to the ALJ"); *see also Burch*, 400 F.3d at 679 ("[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld").

Given the above, the Court concludes ALJ Woode properly considered and rejected Dr. Giglio's opinion.  The Court finds no valid grounds to overturn ALJ Woode's ruling on this issue.

### c.  ALJ Woode's RFC Assessment

Plaintiff next alleges ALJ Woode's RFC finding does not adequately account for Plaintiff's intellectual disability.  (Doc. No. 16, 33-34, 36.)  When considering a claimant's RFC, an ALJ must consider "all medically determinable impairments including [] medically determinable impairments that are not 'severe.'"  20 C.F.R. § 404.1545(a)(2). A condition is not considered severe if "it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1522.  When considering a claimant's mental abilities, an ALJ must also account for a claimant's limitations in "understanding, remembering, and carrying out instructions" that "may reduce [one's] ability to do past work."  20 C.F.R. § 404.1545(c).  Concurrently, an ALJ is not obligated to include mild mental limitations in the RFC determination. *See Woods*, 32 F.4th at 794 (affirming ALJ's decision where ALJ found mild limitations in the claimant's mental abilities and excluded reduced mental abilities in the claimant's RFC assessment).

Moreover, between steps three and four of the ALJ's analysis of the claimant's medical impairments, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(a)(4).  At step four, the RFC is used to determine whether a person can complete relevant past work.  *Id.* § 416.920(a)(4)(iv).  However, if the claimant cannot do relevant past work, the RFC is used again at step five—along with the claimant's age, education, and work experience—to determine whether the claimant "can

make an adjustment to other work." *Id.* § 416.920(a)(4)(iv)-(v).  If the claimant can do other work, the claimant is found to be not disabled. *See id.* § 416.920(a)(v).  Throughout this sequence, the ALJ must assess a claimant's RFC "based on all the relevant evidence in [the] case record." *Id.* § 416.945(a)(1).

Further, the ALJ must consider both the medical evidence and "descriptions and observations of [the claimant's] limitations from [the claimant's] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by" the claimant, family, friends, and other people. *Id.* § 416.945(a)(3); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (holding the ALJ must take the claimant's subjective experiences of pain" into account when determining the RFC).  However, the ALJ, rather than the Plaintiff's treating physician, "is considered the final arbiter in resolving ambiguities in the medical evidence; thus, his conclusions are subject to substantial deference." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Andrews*, 53 F.3d at 1039-40 (holding "even if the evidence reasonably could be construed in a manner more favorable to [Plaintiff], the ALJ's interpretation is rational and must be upheld").

The Court finds ALJ Woode adequately accounted for Plaintiff's intellectual disability.  Here, ALJ Woode considered Plaintiff's severe impairments of schizoaffective disorder, major depressive disorder, mild intellectual disability. (AR 17.) ALJ Woode accounted for Plaintiff's cognitive difficulties by citing Plaintiff's standardized test scores and visits to medical providers such as Drs. Bohn and Giglio. (AR 18-26.)

At step four of the analysis, ALJ Woode concluded Plaintiff did not have past relevant work, therefore, it was proper for ALJ Woode to move to step five in determining Plaintiff's RFC. (AR 27.) The record supported this conclusion, which showed Plaintiff worked as a waterpark attendant for about two months. (AR 355.)

At step five of the analysis, ALJ Woode evaluated Plaintiff's "age, education, and work experience in conjunction with Plaintiff's RFC. (AR 27-28.) Here, Dr. Bohn's

intellectual functioning assessment conveyed Plaintiff's "notable difficulty with problem-solving in his daily life, even with others helping him." (AR 674.) Concurrently, ALJ Woode considered Plaintiff's ability to independently engage in personal tasks such as "grooming and simple household tasks" and leisure activities such as "playing video games" and attending church, which may require decision-making in public settings. (AR 20; 380-85, 535, 575.) ALJ Woode also relied on the opinions of Drs. Rudmann and Hawkins which concluded Plaintiff "remained capable of performing simple routine tasks in non-public settings. (AR 26.) ALJ Woode's RFC accommodated Dr. Bohn's opinion by limiting Plaintiff to "simple routine tasks in low-stress work environments without set production standards and with limited interpersonal interactions, including no public contact." (AR 27.)  ALJ Woode's RFC assessment limiting Plaintiff to simple and routine tasks in low-stress environments accounted for Dr. Bohn's findings articulating Plaintiff has "borderline working memory and full-scale IQ scores, with a full-scale IQ score of seventy-five." (AR 23; 728-29.) *See Andrade v. Comm'r of Soc. Sec.*, 474 F. App'x 642 (9th Cir. 2012) (holding that an ALJ may translate a conclusion that a Plaintiff has a borderline range of intellectual functioning into a restriction of simple and routine work); *see also Vasquez v. Astrue*, No. CV 08-5305-OP, 2009 WL 3672519, at *2 (C.D. Cal. Oct. 30, 2009).

Given the above, the Court finds that ALJ Woode's RFC assessment of Plaintiff adequately accounted for Plaintiff's intellectual disability and is supported by substantial evidence from the record. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (commenting "it is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity").  The Court does not find a valid ground to overturn ALJ Woode's ruling on this issue.

### d.  ALJ Woode's Assessment of Plaintiff's Noncompliance

Lastly, Plaintiff argues ALJ Woode improperly found instances of noncompliance against Plaintiff without considering whether the noncompliance was a symptom of Plaintiff's mental impairments.  (Doc. No. 16, 37-40, 42-43.)  Notably, courts "will not

find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p. When evaluating a claimant's subjective symptoms, courts, "[i]n addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, [courts] will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3)." *Id.* These factors include daily activities, intensity of pain and the location of pain, factors contributing to the symptoms, effectiveness and side effects of medications, non-medication treatments, steps the individual has taken to mitigate pain, and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *See id.* Further, where noncompliance seems to be at issue in the record, Courts will not "find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* An individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms.

Statutory considerations for non-compliance include (1) a claimant receiving "periodic treatment or evaluation" due to their symptoms plateauing; (2) the treatment's side effects are worse than the symptoms; (3) inaccessible or unaffordable treatments; (4) no further treatments seem to benefit the claimant; (5) the claimant has symptoms that are not severe enough or can be remedied with non-prescription medications; (6) the claimant's religious beliefs conflict with following a treatment plan; (7) the claimant lacks understanding of "appropriate treatment for" or consistently following a treatment; (8) the claimant, due to their mental impairment, lacks awareness of the presence of a disorder; and (9) the claimant, who is a child, feels the medication interferes with their activities typical of other children their age. *Id.*

However, if none of the statutory reasons for noncompliance apply, courts "will review the case record to determine whether there are explanations for inconsistencies in

the individual's statements about symptoms and their effects and whether the evidence of record supports any of the individual's statements at the time he or she made them." *Id; see also Winter v. Berryhill*, 711 F. App'x 847, 851 (9th Cir. 2017) (noting that noncompliance with medication will not undermine a Plaintiff's claim of disability if the noncompliance is consistent with the Plaintiff's disability and the Plaintiff consistently took medications and sought mental health treatments for their disorders).

The Court finds ALJ Woode properly assessed Plaintiff's noncompliance with his medication. Regarding the statutory factors, the first factor does not apply, because ALJ Woode explicitly noted in his Notice of Decision that Plaintiff "acknowledged that previous medication had worked well for symptom control," but, Plaintiff "stopped taking these medications at his own initiative." (AR 22-23, 25.) The record supports ALJ Woode's finding. (AR 508; 571-72, 583, 598-99.) The second factor does not apply because ALJ Woode mentioned Plaintiff's improvement over time, a conclusion supported by the record. (*Id.*) Although the record supports the medication "sedat[ing]" Plaintiff, it also supports Zyprexa improving his sleep and Risperdal mitigating his hallucinations and suicidal ideations, therefore, the alleged side effects do not seem worse than the alleged symptoms faced. (AR 22; 343; 535, 583.) The third factor does not apply because ALJ Woode and the record illustrate Plaintiff's frequent visits to treatment facilities and access to medication. (AR 21-26; 555, 570-76, 660-62.) The fourth factor does not apply because Plaintiff benefited from the treatment, which ALJ Woode recognized and the record supports. (*Id.*)  The fifth factor does not apply because both the record and ALJ reported Plaintiff's severe impairments. (AR 17-18; 570-78.) The sixth factor is not at issue, because neither the record nor ALJ Woode's Notice of Decision references Plaintiff's religious beliefs. The seventh and eighth factors do not apply because the record reflects that Plaintiff seemed to understand the treatment's benefits and that he had a disorder. (AR 23-25; 488-492, 570-78.) Lastly, the ninth factor does not apply because Plaintiff is twenty-two years old. (AR 247-48.) Therefore, the statutory factors did not apply, and the Court will look to other reasons explaining inconsistencies in Plaintiff's statements about his symptoms and

the effects.

Because the statutory factors do not apply, the Court will review the record to determine potential explanations for inconsistencies in Plaintiff's statements about his symptoms and side effects and whether the record supports Plaintiff's statements. *See* SSR 16-3p. Importantly, Plaintiff's noncompliance must be attributable to Plaintiff's medical ailment and not preference. *See Molina*, 674 F.3d at 1114; *see also Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (holding "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a clear and convincing reason to undermine a plaintiff's reported subjective symptoms). Here, ALJ Woode's Notice of Decision and the record support the conclusion that Plaintiff consistently ceased taking his medications "at his own initiative."  (AR 25; 725, 735, 738, 741.)  The Court finds Plaintiff's reason for ceasing beneficial treatment uncompelling, because the record supports Plaintiff's ability to comply with and want treatment. (AR 249, 342, 351, 488.) ALJ Woode also noted this conclusion in his decision.  (AR 25.)

However, the Court recognizes the record also supports Plaintiff's noncompliance being attributable to Plaintiff's subjective claim that the medications "sedated him" and Plaintiff being unsure the medication helped. (AR 249, 601, 725, 735, 738, 741.) Conversely, Plaintiff reported he "completely stopped h[e]aring these voices after starting Risperdal," and being "able to concentrate at work," Plaintiff's subjective comments seem to indicate he benefited from the medication. (AR 535, 537.) Plaintiff also "respond[ed] well to Risperdal and Lithium" and said Lithium "helps with SI [Suicidal Ideation] and feelings of depression." (AR 537.) In his Notice of Decision, ALJ Woode recognized Plaintiff's derived benefit from the medication. (AR 23, 25.) Because Plaintiff derived benefits from the medication that helped him return to stabilized levels, in the context of social security benefits, Plaintiff does not possess disabling symptoms. *See Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) (noting impairments that can be controlled effectively with medication are not disabling to determine eligibility for SSI benefits); *see also* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1) (evidence of a medical

treatment helping a Plaintiff return to their level of functioning before developing symptoms can undermine a claim of disability).

Further, Defendant contended Plaintiff failed to demonstrate the causal relationship between Plaintiff's noncompliance with treatment and medication and Plaintiff's underlying mental impairment. (Doc. No. 16, 41.) The Court finds this argument persuasive, because Plaintiff failed to cite medical evidence in the record demonstrating Plaintiff's noncompliance with medication was directly attributable to Plaintiff's mental impairments, and not Plaintiff's personal preferences. *See Molina*, 674 F.3d at 1114 (holding that the Plaintiff must provide medical evidence showing that noncompliance was attributable to her mental impairment); *see also Presley-Carrillo v. Berryhill*, 692 F.App'x. 941, 945 (9th Cir. 2017).

Moreover, Plaintiff erroneously cited two cases unrelated to Plaintiff's current situation. In particular, Plaintiff cited *Conkling v. Berryhill*, 2017 U.S. Dist. LEXIS 132741, at *35 (C.D. Cal. Aug. 17, 2017) and *Edmond v. Berryhill*, No. CV 15-8256-KK, 2017 U.S. Dist. LEXIS 104470, at 20 (C.D. Cal. July 6, 2017). (Doc. No. 16, 39.) The cases Plaintiff cited are not analogous to Plaintiff's situation here, because, in those cases, the plaintiffs offered compelling reasons for noncompliance, like scheduling conflicts and lack of insurance, respectively, which align with statutory reason three (i.e., inaccessible or unaffordable treatments) of SSR 16-3p. Here, Plaintiff ceased medication on his own initiative and did not provide any other compelling reasons. (AR 25.)

The Court finds ALJ Woode properly assessed Plaintiff's noncompliance with medication. Plaintiff failed to offer specific medical evidence showing the casual relationship between his mental impairments and noncompliance with medication. *See Molina*, 674 F.3d at 1114. ALJ Woode properly analyzed Plaintiff's propensity for ceasing beneficial medications that reduced symptoms. Accordingly, the Court finds no valid grounds to disturb ALJ Woode's ruling as to this issue.

/ / /

/ / /

## VI.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Parties' Joint Motion for Judicial Review. Specifically, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant and close this case accordingly.

**IT IS SO ORDERED.**

DATED: September 19, 2023

_____
Hon. William V. Gallo
United States Magistrate Judge

3:22-CV-707-WVG